cc: Fiscal Section

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY,<br><br>    Plaintiff-in-Interpleader,<br><br>v.<br><br>GUDELIA GALICIA, an individual; ANA DURAN, in her capacity as Administrator of the Estate of Jorge Duran; DESIREE ARLENE LECEA, an individual; and FOREST LAWN MORTUARY, a California Corporation,<br><br>    Defendants-in-Interpleader. | Case No. 5:19-cv-01412-JWH-KKx<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW PURSUANT TO RULE 52(a)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE** |

## I. INTRODUCTION AND BACKGROUND

This interpleader action involves competing claims over the proceeds of a life insurance policy for Decedent Jorge Duran that was issued by Plaintiff-in-Interpleader Metropolitan Life Insurance Company ("MetLife"). MetLife filed the complaint commencing this action on July 31, 2019.[1] Defendant-in-Interpleader Desiree Lecea, on the one hand, and Defendants-in-Interpleader Gudelia Galicia and Ana Duran, as Administrator of the Estate of Jorge Duran (jointly, the "Family"), on the other hand, made competing claims to those proceeds.

In July 2020, MetLife deposited the life insurance proceeds of $91,911.25 into the Court's registry.[2] Later that month, all parties stipulated that $22,072.91 of those proceeds could be paid to Defendant-in-Interpleader Forest Lawn Mortuary, to fund Decedent's funeral and burial.[3] The parties also stipulated that MetLife and Forest Lawn could be dismissed from this action and that Ms. Lecea and the Family would continue to litigate over who should receive the remainder of the proceeds.[4] The Court approved the parties' Stipulation on July 23, 2020.[5]

This matter was tried to the Court on July 21, 2021. The issues presented for adjudication were as follows:

---

[1] Compl. (the "Complaint") [ECF No. 1].
[2] *See* Notice of Deposit of Interpleader Funds [ECF No. 44]. That sum consisted of the principal policy benefits of $91,000, plus accrued interest of $911.25.
[3] *See* Stip. of the Parties to: (1) Dismiss MetLife with Prejudice; (2) Discharge MetLife of All Liability under the Policy; (3) Pay Forest Lawn Mortuary $22,072.91 from the Interpleader Funds; and (4) Dismiss Forest Lawn (the "Stipulation") [ECF No. 46].
[4] *See id.*
[5] Order on Stipulation [ECF No. 47].

1. Was Mr. Duran mentally incapacitated to the point that on November 14, 2016, he could not knowingly designate Ms. Lecea as the beneficiary to the life insurance policy?

2. Did Ms. Lecea fraudulently induce Mr. Duran to name Ms. Lecea as the beneficiary to the life insurance policy?

3. Should Ms. Lecea, as the designated beneficiary of Mr. Duran's life insurance policy, be paid the life insurance proceeds that MetLife deposited into the registry of the Court?

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

After a bench trial and pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the Court makes the following findings of fact and conclusions of law:

### A. Findings of Fact

Mr. Duran was an employee of Sempra Energy where he was a participant in the Southern California Gas Company Active Employee Group Health and Welfare Program.[6] The Plan is regulated under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.* As a participant in the Plan, Mr. Duran had $91,000 in basic life insurance benefits (the "Plan Benefits"). The life insurance benefits under the Plan were funded by MetLife, which is also the claim administrator. Mr. Duran died on May 11, 2018, in Los Angeles, California.[7]

Mr. Duran was Ms. Lecea's friend, co-worker, mentor, and supervisor. On November 14, 2016, through MetLife, Mr. Duran designated Ms. Lecea as

---

[6] *See* Complaint, Ex. A (the "Plan") [ECF No. 1-1, ECF pp. 2–77].
[7] *See* Complaint, Ex. B [ECF No. 1-1, ECF p. 79].

the sole beneficiary of the Plan Benefits.[8]  On May 24, 2018, Ms. Lecea submitted a claim for the Plan Benefits.[9]

Gudelia Galicia is Mr. Duran's mother; Ana Duran is Mr. Duran's sister and the court-appointed Administrator of the Estate of Jorge Duran (the "Estate").  On July 17, 2018, Ms. Duran notified MetLife that she had been appointed Administrator of the Estate and that she was contesting the designation of Ms. Lecea as the sole beneficiary of the Plan Benefits.[10]  In that notification, Ms. Duran indicated that Mr. Duran was not of sound mind when he designated Ms. Lecea as beneficiary and that, in view of the circumstances, Ms. Duran believed that the beneficiary designation was procured by fraud.[11]  Ms. Duran also submitted a separate claim to the Plan Benefits on behalf of the Estate on July 17, 2018.[12]  That claim form identified Ms. Galicia as a surviving parent of Mr. Duran.[13]

On January 4, 2019, MetLife advised Ms. Lecea and the Family that their respective claims were adverse to one another and that MetLife could not ascertain whether Mr. Duran's designation of Ms. Lecea as beneficiary was valid in view of Ms. Duran's allegations of Mr. Duran's incompetence and of Ms. Lecea's fraud.[14]  Ms. Lecea and Ms. Galicia did not reach any agreement to resolve their adverse claims to the Plan Benefits.  Accordingly, MetLife filed this

---

[8] *See* Complaint, Ex. G [ECF No. 1-1, ECF pp. 101–102] at ECF p. 101.
[9] *See* Complaint, Ex. C (the "Lecea Claim") [ECF No. 1-1, ECF pp. 81–84].
[10] *See* Complaint, Ex. E (the "Duran Notification") [ECF No. 1-1, ECF pp. 90–92].
[11] *See id.*
[12] *See* Complaint, Ex. F (the "Family Claim") [ECF No. 1-1 at ECF pp. 94–99].
[13] *See id.*
[14] Complaint ¶ 18; *see also id.*, Ex. G.

interpleader action requesting that the Court determine to whom the Plan Benefits should be paid.[15]

At trial the Family asserted that Mr. Duran was mentally incapacitated when he designated Ms. Lecea as the sole beneficiary of the Policy and that the beneficiary designation was the product of fraud and undue influence on the part of Ms. Lecea. Aside from their own assertions, however, the Family did not present evidence of any such mental incapacity on the part of Mr. Duran or of any fraud or undue influence exercised by Ms. Lecea.

## B. Conclusions of Law

Because this interpleader action arises under ERISA, this Court has jurisdiction pursuant to 29 U.S.C. § 1132(e)(1), 28 U.S.C. § 1331, and Rule 22 of the Federal Rules of Civil Procedure.

### 1. ERISA Preemption Generally

Although none of the parties raised the issue of whether ERISA preempts claims under state law regarding incapacity, fraud, and undue influence, the Court briefly addresses that issue here.

ERISA commands, in relevant part, that a plan shall "specify the basis on which payments are made to and from the plan," 29 U.S.C. § 1102(b)(4), and that the fiduciary shall administer the plan "in accordance with the documents and instruments governing the plan," *id.* § 1104(a)(1)(D), making payments to a "beneficiary" who is "designated by a participant, or by the terms of [the] plan," *id.* § 1002(8).

ERISA's preemption provision provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. *Id.* § 1144(a). The Supreme Court has held repeatedly that this broadly worded provision is "clearly expansive." *New York*

---

[15] *See* Complaint ¶¶ 19–23.

*State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995); *see also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) (listing cases). However, the Supreme Court has also recognized that the term "relate to" cannot be taken "to extend to the furthest stretch of its indeterminacy," or else "for all practical purposes pre-emption would never run its course." *Travelers*, 514 U.S. at 655.

A state law relates to an ERISA plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983). To determine whether state law has a "forbidden connection" with an ERISA plan, courts look both to "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans." *Egelhoff v. Egelhoff* ex rel. *Breiner*, 532 U.S. 141, 147 (2001). State laws that regulate, for example, "the relationship between plan and plan member, between plan and employer, between employer and employee . . . and between plan and trustee," *Gen. Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1521 (9th Cir. 1993), are generally preempted. *See Dish Network Corp. on behalf of Dish Network Corp. 401(k) Plan v. Pompa*, 2020 WL 2513671, at *3 (D. Nev. May 15, 2020).

Courts are divided on the issue of whether ERISA preempts common law claims, such as fraud or undue influence, to invalidate beneficiary designations. Some courts have held that allegations based upon the application of state statutes related to incapacity, fraud and deceit, and undue influence—to invalidate the beneficiary designation specified by the plan—are preempted by ERISA. *See Anthem Life Ins. Co. v. Olguin*, 2007 WL 2904223, at *4 (E.D. Cal. Oct. 3, 2007) (denying leave to amend crossclaim where claims for invalidation were based upon state law and, therefore, were preempted by ERISA); *see also Metro. Life Ins. Co. v. Pettit*, 164 F.3d 857, 864 (4th Cir. 1998) ("designating the

beneficiary of an ERISA life insurance plan sufficiently relates to a plan to come within the scope of the preemption clause").

Conversely, other courts in this circuit have held that if ERISA preempted such laws, then "there would be no recourse for fraudulent beneficiary designations in ERISA-governed plans as ERISA is silent on the procedures related to beneficiary changes." *Pompa*, 2020 WL 2513671, at *5. Similarly, in *Dahood v. Noyd*, 2006 WL 8435816 (D. Mont. Oct. 10, 2006), the district court determined that state law claims based upon theories of, *inter alia*, constructive fraud and undue influence were not preempted because the "relevant state law applicable to these claims does not act immediately and exclusively on an ERISA plan nor is any ERISA plan essential to the operation of the state law." *Id.* at *6.

The Sixth Circuit has implicitly recognized claims for undue influence. In *Tinsley v. Gen. Motors Corp.*, 227 F.3d 700 (6th Cir. 2000), the Sixth Circuit held that "[s]ince ERISA does not contain any provisions regulating the problem of beneficiary designations that are . . . the result of undue influence, or otherwise improperly procured, it appears that federal common law must apply to . . . claims [of undue influence]." *Id.* at 704. The *Tinsley* court also noted that where there is no federal common law established in the Circuit, it is appropriate to look to state-law principles of undue influence for guidance. *Id.*

In view of those cases, this Court concludes that claims for fraud, undue influence, and incapacity under state law are not preempted by ERISA. Considering that the Policy was to be paid out in California and that the parties have not contended that any other state's law should apply, the Court will apply California law.

**2. Beneficiary Designation**

Consistent with ERISA, when determining the beneficiary of a life insurance policy under California law, "the intent of the insured as expressed by the [beneficiary designation] should be given effect so far as possible." *Beck v.*

*W. Coast Life Ins. Co.*, 38 Cal. 2d 643, 646–647 (1952).  Where a claimant challenges a beneficiary designation on the ground of undue influence, fraud, or incapacity, the claimant has the burden to prove those claims.  *See Baekgaard v. Carreiro*, 237 F.2d 459, 463 (9th Cir. 1956); *Primerica Life Ins. Co. v. Spaid*, 2016 WL 9223793, at *2 (C.D. Cal. Oct. 18, 2016); *State Farm Life Ins. Co. v. Hansen*, 2012 WL 4467631, at *2 (W.D. Wash. Sept. 26, 2012).

Here, Ms. Lecea proved her claim to the Plan Benefits by showing that the Policy designates her as the sole beneficiary of the Plan Benefits.  Therefore, the Family had the burden to prove their claims of undue influence, fraud, or incapacity.

Regarding incapacity, under California law, "[a] conveyance or other contract of a person of unsound mind, but not entirely without understanding, made before the incapacity of the person has been judicially determined, is subject to rescission."  Cal. Civ. Code § 39(a).  With respect to fraud, the elements under California law are (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) scienter or knowledge of its falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. *See Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996).  Finally, undue influence "means excessive persuasion that causes another person to act or refrain from acting by overcoming that person's free will and results in inequity." Cal. Prob. Code § 86; Cal. Welf. & Inst. Code § 15610.70(a).  "In evaluating undue influence, courts consider the following four elements:  (1) the vulnerability of the victim; (2) the influencer's apparent authority; (3) the actions or tactics used by the influencer; and (4) the equity of the result." *Primerica*, 2016 WL 9223793, at *2.

Here, the Family did not present evidence sufficient to meet their burden to show that Mr. Duran lacked the mental capacity to designate Ms. Lecea as the beneficiary of the Policy or that Ms. Lecea procured that designation by fraud or

undue influence. The evidence that the Family produced showed only that Mr. Duran received sporadic treatment for alcohol use disorder and related depression between 2016 and his death. That evidence did not show that Mr. Duran was incapacitated or of unsound mind when he designated Ms. Lecea as beneficiary. To the contrary, the medical records in evidence show that Mr. Duran did not suffer from any mental impairments.[16] Moreover, the majority of the medical records pertain to treatment that Mr. Duran received in 2017—after Mr. Duran designated Ms. Lecea as the beneficiary of the Plan Benefits in November 2016.[17]

Similarly, the Family presented no evidence of fraud or undue influence. The Family's failure in that regard is not surprising, considering that the Family did not know about Mr. Duran's friendship with Ms. Lecea until after Mr. Duran's death. Indeed, the testimony at trial established that for more than 10 years before his death, Mr. Duran's relationship with the Family was, at best, distant. The only contact between Mr. Duran and the Family during those years was an occasional phone call on holidays from Mr. Duran (who would call from a friend's phone) to Ms. Galicia. Ultimately, the Family's contentions regarding fraud and undue influence were premised entirely upon their speculative belief that Mr. Duran would have wanted the Family to have the Plan Benefits. In the absence of substantial evidence, however, the Family's subjective beliefs are insufficient to prove their claims.

In sum, the Court concludes that the Family failed to sustain its burden to prove that the beneficiary designation should be invalidated on the grounds of undue influence, fraud, or incapacity.

---

[16]  *See, e.g.*, Defs.' Ex. List (the "Family Exhibits") [ECF No. 77] at Exs. 1–8 & 10–15.

[17]  *See id.*

## III. CONCLUSION

For the foregoing reasons, the Court hereby **FINDS AND CONCLUDES** that the Plan Benefits shall be distributed to Ms. Lecea, the sole beneficiary designated by Mr. Duran on November 14, 2016. Judgment will issue consistent with these findings and conclusions.

Dated: November 1, 2021

John W. Holcomb
UNITED STATES DISTRICT JUDGE